IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-01376-PAB

NORI S. ABOSEDRA,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.
_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Nori S. Abosedra on June 8, 2016. Plaintiff seeks review of the final decision of defendant Nancy A. Berryhill (the "Commissioner") denying his claim for supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I. BACKGROUND

On March 28, 2013, plaintiff applied for supplemental security income under Title XVI of the Act. R. at 11. Plaintiff alleged that he was disabled beginning January 1, 2010. *Id*. After an administrative denial, plaintiff appeared at an administrative hearing before an Administrative Law Judge ("ALJ") on October 30, 2014. *Id*. On January 14, 2015, the ALJ issued a decision denying plaintiff's claim. *Id* at 11-28. The ALJ found

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

that plaintiff had the following impairments: lumbar spine disorder, status-post surgeries, chronic pain syndrome, obesity, degenerative disc disease, asthma, and hypertension. *Id.* at 13. The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id*. at 15, and found that plaintiff had following residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 416.967(b), except as stated otherwise as follows. The claimant is able to lift/carry 20 pounds occasionally and 10 pounds frequently. During an 8-hour workday, the claimant is able to stand and/or walk 30 minutes at a time for a total of 4 hours, and sit 30 minutes at a time for a total of 6 hours. The claimant is able to frequently balance and crouch; and occasionally kneel, stoop, crawl, and climb ramps and stairs. He is unable to push, pull, or otherwise operate foot controls with either lower extremity. He is unable to climb ladders, ropes, or scaffolds. The claimant should avoid concentrated exposure to extreme cold. He should avoid prolonged exposure to concentrated levels of pulmonary irritants such as dust, gases, and chemicals. He should avoid unprotected heights, dangerous machinery and excessive vibration.

*Id.* at 15. Based on this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. *Id.* at 27-28. On April 14, 2016, the Appeals Council denied plaintiff's request for review of the ALJ's decision. *Id*. at 1-3. Thus, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel*

*v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

> gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of

those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues that the ALJ erred by (1) failing to appropriately weigh the opinions of plaintiff's treating physicians; (2) failing to discuss all of plaintiff's diagnoses; (3) failing to adequately account for plaintiff's pain; and (4) disregarding portions of the vocational expert's opinion. *See* Docket No. 13 at 2.

#### *1. The ALJ's Weighing of the Medical Evidence*

Plaintiff argues that the ALJ failed to "follow the treating physician rule" and improperly discounted the medical opinions of Jason Cannell, D.O., E. Lee Nelson, M.D., Lief Sorenson, M.D., and Carol Schneider, Ph.D. Docket No. 13 at 10-12.

The ALJ must give consideration to all the medical opinions in the record. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). He must also explain the weight he assigns to such opinions. *Id*. (citations omitted). The opinion of a treating physician is generally entitled to greater weight than that of a non-treating physician because of the unique perspective derived from a treating relationship. 20 C.F.R. § 404.1527(c)(2). Thus, an ALJ must accord controlling weight to the opinion of a treating physician where that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *Id.* Moreover, the opinion of a treating physician merits some measure of deference to be determined based on an application of the factors listed in 20 C.F.R. § 404.1527(c)(2), even if it is not entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2)(i)-(ii). "The ALJ must give

5

specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

The ALJ must consider all the medical evidence in deciding whether to give controlling weight to the opinions of plaintiff's treating physicians. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[W]hen a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report.") (quoting *Goatcher*, 52 F.3d at 290). In assigning weight to the opinion of a treating physician, the ALJ must consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citation omitted). The ALJ need not explicitly discuss each factor, so long as the ALJ provides "good reasons in his decision for the weight he gave to the treating sources' opinions." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Before weighing the medical source opinions, the ALJ extensively discussed plaintiff's medical history, pointing out numerous inconsistencies that plaintiff does not directly challenge. R. at 18-21. The ALJ found that none of the treating source opinions in the record was entitled to controlling weight because they were "not

6

consistent with the other substantial evidence in the record. R. at 22.[2] After stating this determination, the ALJ discussed each opinion, pointing out specific sections of opinions that he accorded more or less weight based on particular medical evidence. R. at 22-24. In particular, he noted that Dr. Cannell's September 9, 2013 opinion was not based on an "assessment of the claimant's physical capabilities;" that Dr. Cannell's July 16, 2013 opinion was unsupported, "brief and conclusory"; and that Dr. Sorenson failed to assess plaintiff's "functional abilities" and that her 2014 letter was inconsistent with evidence regarding plaintiff's schooling and based only on plaintiff's subjective complaints. *Id*. Because the ALJ points out specific inconsistencies and limitations in the treating source opinions that support his determination that they are not entitled to controlling weight, the Court finds the determination well-supported. *See Goatcher*, 52 F.3d at 290.

In relation to the relative weight given certain opinions, the ALJ stated that he gave more weight to the opinions of Drs. McElhinney, Hanze, and Cannell,[3] in part, because they were more consistent with the record as a whole and because they

---

[2] Contrary to plaintiff's suggestion, Docket No. 13 at 15, the ALJ acknowledged that treating source opinions are presumptively entitled to greater weight. R. at 25.

[3] Plaintiff states that the ALJ gave "little weight" to Dr. Cannell's opinions. Docket No. 13 at 10. This appears to be based on a misreading of the ALJ's findings, which gave little weight to some of Dr. Cannell's reports, but gave greater weight to Dr. Cannell's August 15, 2014 letter. *See* R. at 23. The ALJ's RFC was largely consistent with the limitations identified by Dr. Cannell. *Compare id.* at 15 (plaintiff's RFC) *with id.* at 448 (Dr. Cannell's letter stating that plaintiff can lift up to 20 pounds and sit or stand uninterrupted for 30 minutes).

provided more relevant medical evidence.[4]  *Id.* at 24-25.  The ALJ also gave additional weight to the opinions of Drs. McElhinney and Hanze because of their expertise in evaluating disability claims.  R. at 24.  In contrast, the ALJ stated that he gave less weight to the opinions of Drs. Sorenson and Schneider.  R. at 25.  The ALJ specifically noted that Drs. Sorenson and Schneider had a treating relationship with plaintiff, before stating the he discounted their opinions because they lacked expertise in evaluating disability claims, were unfamiliar with plaintiff's record, and offered opinions inconsistent with the record.  R. at 24.

     Plaintiff acknowledges that the ALJ was permitted to accord additional weight to the state examiners' opinions in light of their familiarity with social security law and regulations, but argues that this justification alone cannot overcome the presumptive weight of treating source opinions.  Docket No. 13 at 12.  Plaintiff mischaracterizes the ALJ's opinion.  The ALJ discussed each treating source opinion and provided reasons grounded in the factors he must apply for reducing the weight to be given to each opinion.  The Court's role on appeal is not to reweigh the evidence, but only to determine whether the ALJ applied the correct law and supported his decisions by substantial evidence.  *See Flaherty*, 515 F.3d at 1070.  Here, the Court finds that the ALJ supported his determination to accord less weight to treating source opinions than the weight he gave to other medical opinions with substantial analysis and specific evidence.  Therefore, the Court finds no error.

---

[4] The ALJ also gave additional weight to the opinions of Drs. McElhinney and Hanze because of their expertise in evaluating disability claims.  R. at 24.

### 2. *The ALJ's Discussion of Plaintiff's Diagnoses*

Plaintiff argues that the ALJ erred by failing to account for plaintiff's mental health impairments and diagnosed spine injuries at steps two, three, and four of the disability analysis. Docket No. 13 at 15-23. The Commissioner argues that the ALJ appropriately acknowledged each of plaintiff's impairments, singly and in combination. Docket No. 14 at 17-20.

#### a. Step Two

Plaintiff's arguments with respect to step two are unpersuasive. Any error at step two was harmless because the ALJ found that plaintiff has at least one severe impairment. *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe.").

#### b. Step Three

In his step three analysis, the ALJ stated that "based on a review of the entire record, [] the claimant's physical and mental impairments, either individually or collectively, do not meet or medically equal a listing impairment." R. at 15. The ALJ noted that no medical provider or state agency physician or psychiatric consultant had concluded that plaintiff's impairments met a listing. *Id.*

A finding of disability under the listings reflects "functional difficulties so severe that when the criteria are met, the claimant is presumptively disabled without the need of further analysis." *Lyles v. Astrue*, 2012 WL 1492349, at *3 (N.D. Okla. Apr. 27, 2012). The ALJ may not merely state a summary conclusion at step three without

9

discussing the evidence or reasons for determining that the claimant was not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (reversing where "the ALJ did not discuss the evidence or his reasons for determining that appellant was not disabled at step three, or even identify the relevant Listing or Listings; he merely stated a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment"). However, reversal is not necessary "where the ALJ's factually substantiated findings at steps four and five of the evaluation process alleviates *any* concern that a claimant might have been adjudged disabled at step three." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005).

Plaintiff argues that the ALJ should have considered whether plaintiff met the listing requirements under 1.04A and 1.04C. Docket No. 13 at 18. In order to establish that he had an impairment under listing 1.04, plaintiff bore the burden of showing that he suffered from a disorder of the spine "resulting in compromise of a nerve root . . . or the spinal cord," and further show that the disorder met one of the subparts:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> [or]
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ's discussion of plaintiff's medical evidence provides a substantial basis

10

for concluding that plaintiff's condition did not meet the requirements of 1.04A or 1.04C. The ALJ found that plaintiff's description of back pain was not supported by the medical evidence because his medical history evinced a normal gait and muscle tone, no treating source provider had conducted a complete RFC examination based on objective findings, and plaintiff had the ability to walk, sit, and stand for thirty minutes at a time. R. at 15-27. In order to prove disability under listing 1.04A, plaintiff was required to provide medical evidence showing muscle weakness and motor loss. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A. The ALJ found that the medical evidence showed normal muscle tone and normal strength "throughout all extremities." R. at 19. In addition, any evidence to support a finding under the listing must be based on "objective observation," sufficient to support a finding "that the reported examination findings are consistent with the individual's daily activities." *Lyles*, 2012 WL 1492349, at *4 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00K). The ALJ's findings that plaintiff's daily activities were inconsistent with his pain symptoms and that much of plaintiff's medical evidence was based on his subjective complaints, as opposed to objective observation, precludes a finding of disability under listing 1.04A. Similarly, listing 1.04C requires a finding that plaintiff is unable to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04C. The ALJ's finding that plaintiff is able to walk for 30 minutes at a time precludes such a finding. *See id.* § 1.00(B)(2)(b) (defining an inability to ambulate as "an extreme limitation of the ability to walk . . . defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities"). Accordingly, the ALJ did not err by failing to find plaintiff disabled

under listing 1.04A or C.

Plaintiff also argues that the ALJ erred by failing to adequately consider his mental health impairments under listing 12.00. Docket No. 13 at 20-21. But plaintiff does not argue that his mental impairments meet the listing requirements. *Id*. at 22. Instead, he argues that his mental health diagnoses, in combination with his other limitations, "if correctly analyzed would result in a finding of disability." *Id.* Thus, any alleged error in the ALJ's analysis in relation to plaintiff's mental health issues would have occurred at step four.

### c. Step Four

At step four, ALJ acknowledged that Dr. Schneider diagnosed plaintiff with "depression due to pain, panic disorder, and PTSD." R. at 25. However, the ALJ found that plaintiff repeatedly denied mental health-related symptoms to his primary care doctors. *Id.* at 20-21. The ALJ also found that when plaintiff was diagnosed with anxiety disorder his "[s]ocial functioning, thought processes, and mood and affect were normal." *Id.* at 21. Thus, the record shows that the ALJ considered plaintiff's mental health symptoms and found that the diagnoses did not further restrict his RFC or otherwise support a finding that plaintiff is disabled.

Last, plaintiff argues that the ALJ erred by ignoring his asthma diagnoses. Docket No. 13 at 20. To the contrary, the ALJ discussed plaintiff's asthma symptoms and noted that his asthma symptoms flare, but are normally under control. R. at 20. This is consistent with plaintiff's testimony at the hearing that his asthma is "well

controlled." *Id.* at 55.[5]

Thus, while the ALJ did not specifically address plaintiff's diagnoses at step three of his opinion, the ALJ's decision shows that plaintiff could not have been found disabled under the listing requirements and that the ALJ addressed all of plaintiff's diagnoses at step four. Accordingly, the Court finds that plaintiff has not shown that the ALJ failed to consider all his diagnosis as appropriate.

### 3. The ALJ's Treatment of Plaintiff's Pain Symptoms

Plaintiff argues that the ALJ erred by disregarding plaintiff's pain symptoms. Docket No. 13 at 23-28. The ALJ found that plaintiff's pain symptoms were inconsistent with his daily functioning and the findings contained in the medical record. R. at 16-18. Plaintiff objects to these findings.

First, with respect to plaintiff's daily functioning, the ALJ found that plaintiff does his own personal care, prepares food, does laundry, cleans, shops for groceries, takes college classes, goes to doctor's appointments, and handles his personal finances. *Id.* at 17. Plaintiff argues that the ALJ mischaracterized the facts, but concedes that plaintiff engages in many of the activities identified by the ALJ. Docket No. 13 at 24 (noting that plaintiff continues to attend classes, prepares simple foods, drives short distances, and does minor errands). Even if the ALJ's findings were contrary to plaintiff's testimony, the ALJ found that plaintiff's statements were not credible because plaintiff described "medically remarkable events" and plaintiff's medical records "did not

---

[5] Contrary to plaintiff's argument, the ALJ also acknowledged each of plaintiff's alleged spinal diagnoses at step four and discussed them as cited above in relation to step three. R. at 19 (noting diagnoses of degenerative disc disease, lumbosacral neuritis, spondylosis, and others).

contain any such reports by any of the claimant's health care professionals." R. at 18. For instance, plaintiff testified at the hearing that he uses a cane 90% of the time and spends approximately twenty three hours a day in bed. *Id.* at 50-51, 77. However, no medical provider noted plaintiff's use of a cane for stability or described plaintiff as bedridden. In light of these facts, the ALJ's finding that plaintiff's subjective descriptions of pain were not credible was not contrary to the substantial evidence. *See Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (testimony regarding disabling pain was appropriately discounted in light of claimant's daily activities and inconsistent testimony).

Second, plaintiff argues that the ALJ's findings with respect to pain were inconsistent with the treating source opinions. Docket No. 13 at 25-26. The only treating source opinion cited in plaintiff's brief is the August 15, 2014 letter written by Dr. Cannell. *See id.* (citing R. at 448). In the August 15, 2014 letter, Dr. Cannell stated that plaintiff has indefinite physical limitations that include:

> occasional lifting and carrying of objects up to 20 pounds, uninterrupted sitting, standing or walking of no more than 30 minutes at a time, no use of machinery involving foot movements or produce vibration, no climbing ladders, scaffolds, stooping, kneeling, crouching, crawling, or activities that require balance.

R. at 448. Plaintiff does not explain why Dr. Cannell's opinion would support reversal. The ALJ stated that he gave Dr. Cannell's letter some weight and accounted for each of the limitations identified by Dr. Cannell in plaintiff's RFC. R. at 23; *see also* R. at 15. (finding that plaintiff has an RFC that allows lifting and carrying 20 pounds occasionally, but he cannot sit, stand, or walk more than 30 minutes at a time, and has a limited ability to kneel, stoop, or crawl). While some medical evidence supports plaintiff's

14

claims, the ALJ appropriately discussed all the medical evidence and explained his reasons for giving certain evidence less weight.

The ALJ noted plaintiff's complaints of pain but properly discounted them in light of contrary evidence regarding plaintiff's daily activities and the absence of corroborating medical evidence. The Court finds that the ALJ's findings were supported by substantial evidence.

### 4. The ALJ's Reliance on the Vocational Expert's Testimony

Plaintiff argues that the ALJ erred by ignoring the vocational expert's testimony in response to questions posed by claimant's counsel. Docket No. 13 at 28. Claimant's attorney asked the vocational expert hypothetical questions at the October 20, 2014 hearing related to unscheduled breaks in employment, absenteeism in the form of attending doctor's appointments, and working while under the influence of narcotics. R. at 80-82. However, in relying on a vocational expert's testimony, the ALJ is only required to pose a hypothetical that includes "all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). The ALJ did not find that plaintiff had an RFC that required unscheduled breaks, absenteeism, or the regular use of narcotics. R. at 15. Because plaintiff has not shown that the ALJ's RFC determination was in error, the ALJ did not err by failing to rely on the additional hypotheticals posed by claimant's attorney.

The Court finds that plaintiff has not shown reversible error in the decision of the Commissioner, and the Court will affirm.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff Nori S. Abosedra is not disabled is **AFFIRMED**.

DATED March 29, 2018.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge